Dissent to Order by Judge O’SCANNLAIN; Opinion by Judge BERZON.
ORDER
The opinion filed on April 9, 2012, and appearing at 675 F.3d 1213, is amended as follows:
At slip opinion page 3846, 675 F.3d at 1229, immediately before the heading “C. Fourth Amendment,” add the following text:
< * * *
As this case arises on a motion to dismiss, any explanation for the agents’ differential treatment of the pro- and anti-Bush demonstrators would have to be so obviously applicable as to render the assertion of unconstitutional viewpoint discrimination implausible. The Dissent from the Denial of Rehearing En Banc (“En Banc Dissent”) maintains otherwise, so we briefly respond to its analysis:
Our opinion makes clear that there is simply no apparent explanation for why the Secret Service agents permitted only the pro-Bush demonstrators, and not the anti-Bush protestors, to remain along the President’s after-dinner motorcade route, see Op. at 1225, 1228; the En Banc Dissent suggests none. And the explanation proffered in the En Banc Dissent for the agents’ actions in moving the anti-Bush demonstrators in the first place — namely that the pro-Bush demonstrators were not moved because they were ostensibly further than the protestors from the patio where President Bush was dining, see En Banc Dissent at 14 — is not a basis for granting the agents qualified immunity at the pleadings stage, for several reasons:
First, the En Banc Dissent’s speculative explanation is non-responsive to the protestors’ viewpoint discrimination claim. The question is not why the agents moved the anti-Bush protestors somewhere, but rather why the agents moved the protestors a considerable distance, to a location that, as we have explained, was in “relevant ways ... not comparable” to the place where the pro-Bush group was allowed to remain. See Op. at 1228. No “tape[] measure” is required, see En Banc Dissent at 12, to appreciate that demonstrators separated by more than a full square block, and two roadways, from the public official to whom and about whom they wish to direct a political message will be comparatively disadvantaged in expressing their views. Nor does one need a noise dosimeter to know that the President will be able to hear the cheers of the group left alongside his travel route but unable to hear the group restricted to an area about two square blocks away.
Perhaps there was a reason for the considerable disparity in the distance each group was allowed to stand from the Presidential party — for example, traffic, or an obstruction on the square block adjacent to the Inn, requiring that the anti-Bush demonstrators be moved more than a block further away. But, as matters now stand, nothing in the En Banc Dissent’s entirely hypothetical “explanation is so convincing” as to render “implausible” the plaintiffs’ claim of viewpoint discrimination. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. *947 2101, 182 L.Ed.2d 882 (2012). It is therefore premature at this stage to credit the En Banc Dissent’s theory instead of the protestors’. See id. For the same reason, the En Banc Dissent’s assertion, see En Banc Dissent at 12, that the panel has “second[] guess[ed]” the Secret Service agents’ judgment about how best to protect the President fails to account for the fact that at this stage of the case, the record is devoid of any explanation for the substantial difference in where the two groups of demonstrators were allowed to stand relative to the President’s locations.
Finally, the En Banc Dissent’s invocation of the case law upholding certain buffer zones, see id. at 22, actually illustrates well why the complaint does establish a plausible claim of a violation of clearly established law regarding impermissible viewpoint discrimination in a public forum. Such buffers have been upheld only, and expressly, on the understanding that the restrictions are content and viewpoint neutral. For example, in Hill v. Colorado, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), the Supreme Court upheld the buffer zone ordinance there at issue only after emphasizing that it applied “to all ‘protest,’ to all ‘counseling,’ and to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision. That is the level of neutrality that the Constitution demands.” Id. at 725, 120 S.Ct. 2480. Had the ordinance in Hill established a one-hundred foot buffer zone for pro-abortion demonstrators and a three-hundred foot buffer zone for anti-abortion protestors, there is no doubt such a viewpoint discriminatory ordinance would have been summarily invalidated.
The protestors here plausibly allege just such a significant difference in the buffer zone in a public forum. And Hill was, of course, decided before the events in this case. The protestors therefore allege a plausible case of impermissible viewpoint discrimination as of the time this case arose. >
An amended opinion is filed concurrently with this order.
With this amendment, the panel has unanimously voted to deny appellants’ petition for rehearing. Judge Berzon and Judge N.R. Smith have voted to deny the petition for rehearing en banc, and Judge Ebel so recommended.
The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on en banc rehearing. The majority of the active judges have voted to deny rehearing the matter en banc. Fed. R.App. P. 35(f).
The petition for rehearing and the petition for rehearing en banc are DENIED. Judge O’Scannlain’s dissent from the denial of en banc rehearing is filed concurrently herewith.
No further petitions shall be entertained.